UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11559-RWZ

GREEN MOUNTAIN REALTY CORP.

v.

JOHN S. LEONARD, *et al.*

MEMORANDUM OF DECISION and ORDER
May 18, 2011

**ZOBEL, D.J.**

Plaintiff Green Mountain Realty Corporation (hereinafter "Green Mountain") brings this suit against both the Town of Milton's Conservation Commission ("MCC") and its Zoning Board of Appeals ("BOA"), as well as against individual members of the board (including defendant John S. Leonard, its chairman), challenging their separate decisions denying Green Mountain's application for a special permit to construct a 140-foot monopole wireless communication tower in Milton, Massachusetts.

Green Mountain contends that both the BOA and MCC's decisions violated the Telecommunications Act of 1996 ("TCA"), 47 U.S.C. § 332(c)(7)(B), because both decisions (1) were not supported by substantial evidence (§ 332(c)(7)(B)(iii)) (Counts I and II); and (2) effectively prohibit Green Mountain and others from providing personal wireless telecommunications services in the Town of Milton (§ 332(c)(7)(B)(iii)) (Counts III and IV). Finally, plaintiff contends that the BOA's decision exceeded the authority of the board, and was unreasonable, arbitrary, and capricious in violation of Mass. Gen.

Laws ch. 40a, § 17 (Count V).[1]

Now pending are the parties' cross-motions for summary judgment.

I.  **Factual and Procedural Background**

   A.  **Special Permit Application**

In 2008, Green Mountain entered into a lease agreement with the Commonwealth of Massachusetts which authorized it to construct a personal wireless communications facility on a portion of Commonwealth-owned land in the Blue Hill River Road area of Milton, Massachusetts, which extends along the Exit 3 southbound ramp of I-93 at Houghton's Pond (the "Site"). It claims that MetroPCS and T-Mobile, two FCC-licensed providers of commercial mobile services, have a significant gap in wireless coverage in this area.

To remedy the coverage gap, on May 21, 2009, Green Mountain filed an application for a special permit with the BOA to erect a 140-foot cell tower on the Site. After holding public hearings, on September 24, 2009, the BOA issued its written decision denying the application.[2]

Separately, on February 12, 2009, Green Mountain filed a notice of intent for cell tower construction with the MCC. That application was stayed pending a decision by

---

[1] The court refers to ¶¶ 95-96 of the First Amended Complaint (misnumbered as Count IV), as Count V. (Docket # 7.)

[2] The BOA had earlier orally denied the application for a special permit on the ground that there was no substantial gap in coverage. Plaintiff filed its original complaint (Docket # 1) on September 18, 2009, objecting to the lack of a written decision. The BOA issued its written decision a few days later. Plaintiff then filed an amended complaint (Docket # 7) on October 28, 2009.

2

the BOA. On October 9, 2009, following the BOA's denial, the MCC denied the wetlands application. See Facts ¶¶ 14, 19-22.

### B. The BOA's Decision

In its decision, the BOA set forth its reasons for denying the application in eleven numbered paragraphs. Reduced to their essence, the reasons fall into three categories. First, the Board concluded that there is adequate service in the area (Reason 4). Second, it found that the proposed monopole would have an adverse impact on the public's aesthetic experience in the historic Blue Hills Reservation area (Reasons 1, 2, 3, 5, 6, 7, 8, and 11). Third, it held that Green Mountain did not meet its burden under the Town of Milton's Bylaws to demonstrate that existing facilities are inadequate, that the permit is in harmony with the Town's bylaws and that there exists no feasible alternative (Reasons 9 and 10). See Town of Milton BOA Decision dated September 24, 2009, Docket # 13-2.

### C. The MCC's Decision

The MCC rejected Green Mountain's application on the grounds that (1) the project includes 4,612 square feet within the Riverfront Area and 109 feet within the Bordering Vegetative Wetlands area and Green Mountain failed to prove that there would be no significant adverse impact upon the interests protected; (2) Green Mountain failed to provide analysis of alternative sites; and (3) the proposal would have adverse aesthetic consequences, particularly given the height of the proposed tower. See Town of Milton Conservation Commission Decision dated October 9, 2009, CONCOM 125.

## II. Analysis

### A. BOA's Decision: Substantial Evidence

Green Mountain first claims that the BOA's denial of its application for a special permit is not supported by substantial evidence in violation of 47 U.S.C. § 332(c)(7)(B)(iii).

Substantial evidence review is narrow, focusing on whether the record includes "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Southwestern Bell Mobile Sys., Inc. v. Todd, 244 F.3d 51, 58 (1st Cir. 2001) (quoting Penobscot Air Servs., Ltd. v. F.A.A., 164 F.3d 713, 718 (1st Cir.1999)). A decision is not supported by substantial evidence if "the record clearly precludes the [Board's] decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence." Id. at 59 (internal quotations omitted). However, contradictory evidence in the record does not preclude a finding that substantial evidence supports a zoning decision. See id. The burden of demonstrating that a decision is not supported by substantial evidence remains with the applicant. See id. at 63.

As noted above, the BOA denied Green Mountain's application for three sets of reasons. I address each in turn.

#### 1. Adequate Service

Under the Town's Bylaws, the Board must issue a special permit where, inter alia, "(1) existing facilities do not adequately address the need for service...." Town of

Milton Bylaws, Section III.G.4.

In denying the permit application, the BOA concluded that there was "reasonably adequate" cell phone service in the area. See Town of Milton BOA Decision dated September 24, 2009, Docket # 13-2. It accepted that an average of 2,000 calls out of every 300,000 calls placed within the gap area are dropped, which the Board deemed to be a relatively low percentage.

Green Mountain asserts that both MetroPCS and T-Mobile have demonstrated a "gap" in coverage, which lasts approximately 2-4 minutes, and extends from two to four miles along I-93 in the Blue Hill River Road area. It proffered supporting affidavits from two experts, one from Metro PCS and one from T-Mobile, both radio frequency engineers, who concluded that the proposed tower was necessary. See Affidavit of Don Nguyen, T-Mobile Radio Frequency Expert (BOA 319-321) and Statement of Frantz Pierre, MetroPCS Radio Frequency Engineer (BOA 299-300).

Green Mountain's expert reports do, indeed, conclude that there is a coverage gap. But they contain no quantifiable data to support their conclusion. At the same time, Green Mountain did admit during the hearing that out of every 300,000 calls placed within the gap area, 2,000 calls are dropped.[3] In light of its admission that fewer than 1% of calls are dropped, the BOA's decision is supported by substantial

---

[3]Green Mountain now appears to dispute the accuracy of the underlying numbers. See Pl's Mem. of Law in Support of Cross Mot. for Summ. Judgment at 14. However, Green Mountain's attorney provided the information to the BOA, and the BOA was entitled to rely upon the information. See BOA Decision at 2. Green Mountain further contends that the Board erroneously calculated that this resulted in a dropped call rate of 0.0066%, when in fact it results in a dropped call rate of 0.66%.

evidence.[4]

## 2. Aesthetics/Preservation of Historic District

Another factor to be weighed in determining whether a permit shall issue is whether "the proposed use is in harmony with the general purpose and intent of [the] bylaw." Town of Milton Bylaws, Section III.G.4. The BOA decided that the proposed use had a negative aesthetic and visual impact upon the residential character of the Town of Milton, and thus was not in harmony with the general intent and purpose of the zoning bylaws. It further ruled that the zoning bylaws prohibit "free-standing telecommunications facilities within historic districts established pursuant to [Mass. Gen. Laws] ch. 40C," including the Blue Hills Reservation.

Green Mountain's proposed location is in a nonresidential area between an onramp and a major interstate highway on land that contained poles and towers. While the proposed site is not located in the Blue Hills Reservation, the BOA noted that the monopole would be "widely visible" from the Reservation.

---

[4]While the test with respect to substantial evidence review is whether the existing facilities adequately address the need for service, the analysis that has evolved regarding the existence of a significant gap is instructive. In general, mere "dead spots," which are defined as "small areas within a service area where the field strength is lower than the minimum level for reliable service," 47 C.F.R. § 22.99, do not qualify as significant gaps in service. See 360° Communications Co. v. Bd. of Supervisors of Albemarle County, 211 F.3d 79, 87 (4th Cir. 2000) (noting that regulations contemplate the existence of dead spots because the Telecommunications Act does not require 100% coverage). Rather, a gap will be deemed to be "significant" if the call failure rate is five to seven percent. See Cellular Tel. Co. v. Zoning Bd. of Adjustment of Harrington Park, 90 F. Supp.2d 557, 565 (D. N.J. 2000). A coverage gap of less than 1% cannot be said to result in either inadequate service or a significant gap in coverage.

"[A] few generalized expressions of concern with 'aesthetics' cannot serve as substantial evidence on which [a town] could base [a] denial." ATC Realty, LLC v. Town of Kingston, New Hampshire, 303 F.3d 91, 97 (1st Cir. 2002) (citing Cellular Tel. Co. v. Oyster Bay, 166 F.3d 490, 496 (2d Cir. 1999)).  However, "[a] negative aesthetic impact, properly supported by substantial evidence, may itself be a sufficient reason to deny a permit." New Cingular Wireless PCS, LLC v. Town of Stow, Mass., Case No. 06-10659-GAO, 2009 WL 2018450, *7 (D. Mass. 2009).  Such denials have been affirmed so long as the aesthetic judgment is "grounded in the specifics of the case and [does] not reflect a negative view that could apply to any wireless technology installation, regardless of location." Nextel Comm. of Midatlantic, Inc. v. City of Cambridge, 246 F. Supp. 2d 118, 123 (D. Mass. 2003).

Green Mountain correctly notes that the Site is located in a residential area next to an Interstate with no direct abutters.  Nevertheless, it also concedes that the tower would be visible from four locations on the Reservation and the Carisbrooke Road neighborhood.  In addition, the Board relied on petitions and photographs from 27 Milton residents which described and depicted the visual impact of Green Mountain's proposed tower on historic, cultural, and recreational resources.  Thus, its conclusion is supported by the record.

### 3. Feasible Alternatives

The final factor in determining whether a permit shall issue is whether "there exists no feasible alternative to the proposal that would adequately address the need in

7

a less intrusive manner." Town of Milton Bylaws, Section III.G.4. The proponent of the wireless tower has the burden to develop a record demonstrating that no feasible alternatives exist. See, e.g., Southwestern Bell, 244 F.3d at 63 (holding that carrier, in bringing substantial evidence claim under the TCA, had the burden to establish that no feasible alternative sites existed).

Green Mountain stated during the application process that it investigated other areas, but concluded that nearly all the alternative land in Milton within the coverage gap is unsuitable to construct a wireless facility due to the presence of wetlands, steep slopes, and/or no curb-cut areas or utilities running to the site. It notes that the proposed site, by contrast, already has approval for curb-cuts and has utilities running to it due to the existence of Massachusetts Highway Department structures on it. Its objections are unpersuasive. Nothing in the record demonstrates that Green Mountain sought approval for curb-cuts or provision of utilities to any alternative locations, nor is there evidence that such approval would not be forthcoming.

Residents submitted four specific alternative locations to the BOA; one west of the proposed site (Location 2); one along the southbound off-ramp of Exit 3 (Location 3); one along the southbound on-ramp of Exit 4 (Location 4) and one furthest east along I-93 (Location 5). Green Mountain objects to these locations on various grounds. Its objections are meritless. For example, it contends that placing a tower at Location 2 would not cover MetroPCS's coverage gap, yet it fails to address whether that location would cover T-Mobile's coverage gap. It further contends that Locations 3 and 4 have not been offered for lease by the Massachusetts Highway Department, yet does not cite

8

any request or negotiations. It further speculates that it is "unlikely" that the Massachusetts Highway Department would approve a tower at Location 3, yet offers no factual support for that contention.

Accordingly, the Board's decision to reject Green Mountain's proposal did not violate the TCA. The decision was supported by substantial evidence contained in the written record.

### B. BOA's Decision: Effective Prohibition

Plaintiff's second claim objects that the BOA's decision effectively prohibits it from providing wireless service in violation of 47 U.S.C. § 253(2). Unlike a substantial evidence claim, an effective prohibition claim may be based on newly proffered evidence and is reviewed de novo. See Second Generation Properties, L.P. v. Town of Pelham, 313 F.3d 620, 629-30 (1st Cir. 2002).

To prevail on a claim that an individual denial is an "effective prohibition," a carrier must first demonstrate that a "significant gap" in coverage exists in an area. Omnipoint Holdings, Inc. v. City of Cranston, 586 F.3d 38, 48 (1st Cir. 2009). Second, it must demonstrate either (1) that "the town sets or administers criteria which are impossible for any applicant to meet;" or (2) there are no feasible alternative sites which would fill the gap in service.[5] Second Generation, 313 F.3d at 630. The burden

---

[5]The First Circuit has noted that there is some significant variation among circuits with respect to the test for effective prohibition. While almost all circuits require courts to (1) "find a significant gap in coverage" and (2) "consider whether alternatives to the carrier's proposed solution to that gap mean that there is no effective prohibition," courts vary in "the language they use to measure when a significant gap

of proof falls on the provider and requires a showing "from language or circumstances not just that *this* application has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." Town of Amherst, N.H. v. Omnipoint Communications Enterprises, Inc., 173 F.3d 9, 14 (1st Cir. 1999) (emphasis in original).  Here, a genuine factual dispute exists about whether there is significant gap on the Site.  Both parties have proffered additional evidence, which this court may properly consider.  Even assuming, however, that such a gap exists, there remains the question whether Green Mountain has met the "heavy burden" of demonstrating that "denial of its application for the one particular site is tantamount to a prohibition of service."  See 360° Communications Co. v. Bd. of Supervisors of Albemarle County, 211 F.3d 79, 87-88 (4th Cir. 2000) (assuming without deciding a substantial gap existed, and concluding that carrier had failed to establish effective prohibition).  Green Mountain has not demonstrated that the Town's bylaws are impossible for any applicant to meet.  To the contrary, the BOA has granted fourteen special permit applications (initial and renewal) for wireless facilities.  Nor has it demonstrated that its

---

exists and about the inquiry into alternative solutions." Omnipoint Holdings, 586 F.3d at 48.  The Second, Third, and Ninth Circuits have, for example, adopted a test that considers rejection of a permit application a denial of effective prohibition where the proposed site would be the "least intrusive means to close a significant gap in service." See Sprint Spectrum, L.P. v. Willoth, 176 F.3d 630, 643-44 (2d Cir. 1999), APT Pittsburgh Ltd. Partnership v. Penn Township, 196 F.3d 469, 480 (3d Cir. 1999), and MetroPCS, Inc. v. City and County of San Francisco, 400 F.3d 715, 733 (9th Cir. 2005).  The First Circuit, like the Fourth and Seventh Circuits, relies instead on evaluation of the feasibility of alternative sites.  See Omnipoint Holdings, 586 F.3d at 48; 360° Communications Co. v. Bd. of Supervisors of Albemarle County, 211 F.3d 79, 87-88 (4th Cir. 2000), and VoiceStream Minneapolis, Inc. v. St. Croix County, 342 F.3d 818, 835 (7th Cir. 2003).

10

application describes the only feasible plan to fill the gap in service. As noted above, residents submitted four specific alternatives to the BOA, more than one of which may be feasible.

### C. MCC Decision

The MCC's decision must similarly be supported by substantial evidence. The MCC enforces the Commonwealth's Wetlands Protection Act, Mass. Gen. Laws ch. 131, § 40 (the "WPA"). Under the WPA, the MCC may issue a permit for work in a riverfront area where the applicant demonstrates, by a preponderance of the evidence, that such work (1) will have "no significant adverse impact on the riverfront area" designated as such to protect the private or public water supply; ground water; to provide flood control; to prevent storm damage and pollution; to protect land containing shellfish, wildlife habitat; and the fisheries; and (2) "there is no practicable and substantially equivalent economic alternative to the proposed project with less adverse effects on such purposes." The Rivers Protection Act and the Town of Milton Bylaws also regulate the wetlands. See Section IV.B.3. Under each governing law, the applicant has the burden of proof to demonstrate that there will be no significant adverse impact upon the interests protected.

Here, Green Mountain does not dispute that the project includes 4,612 square feet within the Riverfront Area of the Blue Hill River and 109 feet within the Bordering Vegetative Wetlands area. Instead, it argues that the wetlands were already degraded due to the area's location between the highway and the on-ramp, and there is no

11

evidence that the proposal would have a significant additional effect on its condition. Moreover, it argues, there is no evidence whatsoever to support the MCC's contention that there will be storm water run-off, or that the addition of such impervious surface materials will impact the wetlands, particularly given the surroundings of the Site. But it is Green Mountain's burden to prove no impact.

Green Mountain has failed to sustain its burden of proof that there would be no significant adverse impact upon the area. It conceded that the project is partially in the wetlands area and would impact the area. In fact, it proposed to replicate the 109 square feet of resource area and the portion of the non-disturbance zone that the project would alter. The MCC's conclusion that the proposed tower would have a "significant adverse impact" on the wetland area is supported by substantial evidence.

## III. Conclusion

For these reasons, Plaintiff's Motion for Summary Judgment (Docket # 28) is DENIED. Defendants' Motion for Summary Judgment (Docket # 24) is ALLOWED.

    May 18, 2011                                        /s/Rya W. Zobel
      DATE                                                 RYA W. ZOBEL
                                                            UNITED STATES DISTRICT JUDGE